QUILP GOLD MINING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16400.   Promulgated November 18, 1930.

*L. F. Reinhard, C. P. A.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

OPINION.

BLACK : This proceeding involves a deficiency in income and profits taxes for the year 1920 in the sum of $2,151.05, computed by the respondent as follows:

| | | |
|---|---:|---:|
| Net loss as shown in return | | $21,099.31 |
| Depletion claimed | $49,272.66 | |
| Depletion allowed | 3,699.54 | |
| | | 45,573.12 |
| Balance | | 24,473.81 |
| Net loss 1919 | | 2,455.55 |
| Net income corrected | | 22,018.26 |
| Portion of net income applicable to silver 17.39 | | 3,828.98 |
| Excess-profit tax computed under section 302, as statutory invested capital is indeterminable | | 165.80 |
| Net income | $22,018.26 | |
| Less: | | |
|     Profits tax | $165.80 | |
|     Exemption | 2,000.00 | |
| | | 2,165.80 |
|       Balance taxable at 10 per cent | 19,852.46 | |
| Tax at 10 per cent | | 1,985.25 |
|       Total tax | | 2,151.05 |
| Tax previously assessed | | None. |
|       Deficiency in tax | | 2,151.05 |

It has been held by this office that the correct value for your property is as follows:

Ore reserves, shipping ore _____ 44,823 tons
Assay 0.54 ounce gold, 3.50 ounces silver.
Recovery 95 per cent.

In arriving at the depletion allowed petitioner in determining the deficiency, respondent computed depletion as follows:

| | |
|---|---:|
| Recoverable gold value, 0.54 x $20.00 x .95 | $10.26 |
| Recoverable silver value 3.50 x $0.65 x .95 | 2.16 |
| Total recoverable value per ton | 12.42 |
| Recoverable ounces gold in reserves | 22,994.2 |
| Total recoverable value in reserves 44,823 tons at $12.42 | 556,701.66 |
| Estimated royalty value, 25 per cent | 139,175.42 |
| Less: | |
| Cost of administration and collecting royalties, etc. 41.65 per cent | 57,966.56 |
| Estimated net profit | 81,208.86 |
| Discount factor, 10 years at 12 per cent and 4 per cent | .491906 |
| March 1, 1913, value operating profit | 39,947.12 |
| Less: | |
| Value of plant | 15,461.83 |
| | 24,485.29 |

Depletion rate per ounce gold $\frac{24485.29}{22994.2}$ _____ 1.0648

*Depletion schedule*

| Year | Ounces gold | Sustained and allowed | Claimed | Disallowed |
|---|---|---|---|---|
| 1920 | 3,474.4 | $3,699.54 | $49,272.66 | $45,573.12 |

The petitioner in his appeal contested the determination made by the respondent on the following grounds:

The Commissioner erred in reducing total recoverable value in reserves ($556,701.66) by 75%, to an estimated royalty value of 25%—$139,175.42.

The Commissioner erred in applying discount factor of .491906 as shown by Haskolds formula and used by the Commissioner on ten-year basis to arrive at estimated operating profit.

The Commissioner erred in deducting value of plant, $15,461.83, from estimated operating profit to arrive at value of ore in block as of March 1, 1913.

The Commissioner erred in allowing depletion only on gold mined in place of value of all ore mined.

Other grounds were urged by petitioner in his appeal, but such grounds were amplification of the above stated objections and are comprehended therein.

Petitioner is a mining corporation organized under the laws of the State of Washington, with its mines and principal office at Republic, Wash. It is engaged in gold and silver mining and is the

owner of the Quilp lode mine consisting of 13.532 acres in Republic Ferry County, Wash., and was the owner of same on March 1, 1913.

On September 9, 1910, petitioner entered into an agreement with J. L. Harper, by which it agreed to sell its mining claim to Harper for the sum of $250,000, of which $15,000 was to be paid in cash on or before September 24, 1910, and the balance at the rate of $5,000, every 90 days. As security it was provided that 25 per cent of the gross value of all ores shipped to the mill or smelter should be paid over to the petitioner to be credited on the purchase price. Harper took possession under this contract, operated the mine, and paid on account of the purchase price the sum of $58.792.29, of which $24,500 was paid direct and the balance of $34,292.29 was receipts from the mill or smelter from ore products from the mine.

These payments of 25 per cent from ore products are denominated royalty in the contract, but clearly this was a misnomer and this was merely a method of payment of a part of the purchase price. In fact, the contract so stated. Payments ceased June 17, 1912, and the contract was abandoned by Harper and the mine was repossessed by petitioner.

It seems to have been on account of this contract with Harper that respondent made his determination of depletion allowance to petitioner on the basis that petitioner was the owner of only a 25 per cent royalty on March 1, 1913, instead of the owner of all the ore in the mine in place. We think this was error.

The evidence shows that petitioner was the owner of the mine on March 1, 1913, owning the same by mesne conveyances through a patent from the United States. The depletion allowance to petitioner should be computed on basis of entire ownership of the mine, such ownership existing both on March 1, 1913, and during the taxable year 1920. The March 1, 1913, value of petitioner's mine, exclusive of improvements thereon, was $164,036 after taking into consideration all elements which enter into value as of that date.

The depletion rate per ounce of gold for the taxable year was:

$$\frac{\$164,036.93}{22994.3} = \$7.1338 \text{ depletion per ounce of gold.}$$

*Depletion schedule*

| Year | Ounces gold | Sustained and should be allowed | Claimed | Should be disallowed |
|---|---|---|---|---|
| 1920 | 3474.4 | $24,786.17 | $49,272.66 | $24,486.49 |

(The depletion factor of $7.1338 per ounce gold includes the depletion on silver.)

*Decision will be entered under Rule 50.*